396 P.2d 719

Louise E. ELLIOT, Plaintiff-Respondent,

v.

Philip ELLIOT, Defendant-Appellant.

No. 9400.

Supreme Court of Idaho.

Nov. 16, 1964.

Randall & Bengtson, Lewiston, for appellant.

Ware, Stellmon & O'Connell, Lewiston, for respondent.

TAYLOR, Justice.

Defendant (appellant) in partnership with his brother, Gordon Elliot, began farming in 1951. The partners leased lands from their father and uncle by oral lease upon a year to year basis. Of this leased land 378 acres was farm land and 320 acres grazing land. In 1952 they expanded their operation to include 130 acres of Indian farm land. This land was leased, from Indian allottees, in the name of Gordon Elliot as lessee by written leases dated January 16, 1952, expiring December 31, 1957. The partnership also engaged in cattle raising.

There were no written agreements of any kind between the partners and they kept no books or accounts and filed no partnership income tax returns. No common or joint bank account was maintained. Partnership obligations were paid by the partners individually. No formal accounting was ever had between them. Each partner had a 50% interest in the business and assets of the partnership. However, at the end of the year 1954 the partners agreed that thereafter each would purchase and pay for equipment "on his own." The court found that at the end of each year the partners settled their receipts and disbursements on terms and in a manner satisfactory to themselves.

In the fall of 1957 Gordon Elliot withdrew from the partnership and separated from his wife, the plaintiff (respondent) in this action. The plaintiff and Gordon Elliot were married in January, 1940. They lived together on the leased farm land during the existence of the partnership. Defendant Philip Elliot during that time was unmarried. Plaintiff and Gordon were divorced April 30, 1958. By the decree of divorce Gordon's interest in the partnership assets was awarded to plaintiff. The court in this case found that the partnership was dissolved by Gordon's withdrawal Oc-

tober 15, 1957. Thereafter, Philip conducted the farming operations as before. In the fall of 1957 after Gordon's departure, plaintiff advised defendant of her intention to procure renewal of the leases on the Indian lands in her own name, or in the name of Gordon Elliot. Defendant then requested plaintiff to allow him to procure new leases in his name, and assured her the interests of plaintiff and her children would be safeguarded. Accordingly defendant procured new leases in his own name, which were executed January 22, 1958. These leases were for five years and expired December 31, 1962. In the fall of 1957, after Gordon's departure, plaintiff requested defendant to render an accounting of the partnership business and assets, and offered to settle with him for a stated amount without an accounting. This the defendant refused to do and advised plaintiff that Gordon had no interest to settle.

In March, 1959, plaintiff commenced this action for an accounting, and to recover the interest of Gordon Elliot in the assets of the partnership.

Two trials were had to the court, the first on October 30, 1962. By its findings, conclusions and interlocutory order on the first trial the court determined that the partnership interest of Gordon Elliot was transferred to plaintiff by the divorce decree; that defendant had refused to account to the plaintiff; that plaintiff was entitled to an accounting; and that a further hearing should be had to determine the value of plaintiff's interest in the partnership business and assets.

The second trial was had June 13, 1963. In its findings, which were made July 15, 1963, in addition to the facts hereinbefore recited, the court found that the cattle which had belonged to the partnership had been divided between the partners and settlement of their respective interests therein accomplished at the time Gordon Elliot withdrew in October, 1957. As to other partnership assets the court found:

"That the partnership property and the value of Gordon Elliot's one-half thereof at dissolution was and is as follows: Combine, $1,250.00; Chevrolet truck, $212.50; HJohn Deere 5-bottom plow, $200.00; pea bar, $62.50; drill, $200.00; rod-weeder, $62.50; harrow cart, $61.25; truck rack, $50.00; summer fallow, $245.00 (being 50% of 70 acres at $7.00 per acre); 15% interest in one TD-9 tractor, $337.50; that after dissolution defendant continued the partnership business, leasing the Elliot and Indian lands mentioned in the evidence and the prior findings of this Court; that he renewed the Indian lease for 5 years from January 1, 1958; and that of the Elliot lands from year to year for over 5 years after said 1st

day of January, 1958, in the same manner as he and Gordon Elliot had done in the past; that said leases were de facto renewable and constituted an asset of the partnership at the time of dissolution, having a value of $500.00 per year for a period of 5 years, or a total of $2,500.00, less, however, a 6% annual discount amounting to $470.00, or, $2,030.00; that the value of Gordon Elliot's interest therein was 50% thereof or $1,015.00."

Judgment was entered in favor of plaintiff for the recovery from defendant of $3,-696.25, together with interest thereon at the rate of 6% per annum from October 15, 1957, to the date of judgment, amounting to $1,275.21. Defendant prosecuted this appeal from the judgment.

By his assignments of error defendant raises four issues: first, that the court erred in finding that the cattle belonging to the partnership had been divided and a settlement accomplished between them of their respective interests therein; second, that the court erred in finding certain items of farm equipment were assets of the partnership; third, that the court erred in finding the leases constituted an asset of the partnership; and, fourth, that the court erred in awarding interest upon the amount found due plaintiff from the date of dissolution of the partnership to the date of judgment.

Defendant contends that the evidence establishes there were 56 head of partnership cattle on hand at the date of the dissolution, and sets forth dates when sales of cattle were made by the respective partners, contending that this evidence shows that Gordon Elliot received more than his share of the cattle belonging to the partnership. According to the court's findings there were left on hand of the partnership cattle 38 head, 18 of which were taken away by Gordon and sold by him in March, 1958. The 20 head remaining on the property were sold by the defendant. The proceeds of the sale of 8 of the remaining cattle were given to the plaintiff by defendant. In regard to this transaction the court found that the defendant "either considered that the said $709.37 belonged to the plaintiff or else he made a gift to her of that amount; in either case the presumption arises that a division of the 1957 cattle crop occurred at about the time of dissolution."

In its final memorandum decision the court pointed out, "While the wheat crop was divided between the partners, Gordon generally kept the cattle money and Philip kept the pea money. In 1957 Philip got all of the pea and barley proceeds." From this it is evident that unequal division of cattle proceeds may have been counter-balanced by unequal division of crop proceeds. The same uncertain and unknown balancing of accounts

between the partners affected the court's determination as to what items of equipment were assets of the partnership upon dissolution.. The court respected the 1954 agreement between the partners, thereafter to effect separate purchases of equipment, and awarded defendant separate ownership of a Ford truck and an 85% interest in a TD–9 tractor, purchased subsequent to that agreement. The 15% interest in the tractor awarded to Gordon arose out of the trade-in value of an old tractor belonging to the partnership. Exactness in the identification of partnership assets at dissolution was impossible because of the manner in which the partnership business was conducted and the absence of records and accounts. The conflicting and confused state of the record justified the court in drawing presumptions and conclusions as to specific items. Viewed as a composite whole, the findings are supported by substantial and competent evidence.

As to the leases, the court found that defendant continued to farm the leased lands, during the five years subsequent to dissolution, in the same manner as before; continued to use the partnership equipment in that activity; and refused to wind up the affairs of the partnership or to render any accounting to plaintiff.

■ Gordon's withdrawal effected a dissolution of the partnership. I.C. § 53–331.

"The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.". I.C. § 53–329.

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." I.C. § 53–330.

Barron v. Koenig, 80 Idaho 28, 324 P.2d 388 (1958).

■ Plaintiff did not become a partner by virtue of the divorce decree, but she did thereby become the successor in interest of Gordon Elliot in the assets of the partnership, subject to dissolution and the payment of its existing obligations.. She became in effect Gordon's assignee.

"In case of a dissolution of the partnership, the assignee is entitled to receive his assignor's interest and may require an account from the date only of the last account agreed to by all the partners." I.C. § 53–327(2).

■■ Upon the dissolution it became defendant's duty to wind up the affairs of the partnership. His refusal to limit his subsequent activities to the performance of that duty rendered defendant liable to account to plaintiff for the subsequent use of partnership assets. The leases had not expired at the date of the dissolution, and crops had been planted upon the leased lands in the fall of 1957 for the production of crops to be harvested in 1958. In view of the statute I.C. § 53–330, defendant's refusal to wind up the partnership affairs

and his continuance of the partnership business, and refusal to account, justified the court's finding that the successive renewals of the leases were partnership assets. The value thereof as fixed by the court was modest and amply supported by the evidence.

As to the interest awarded from the date of dissolution to the date of judgment, the general rule is that interest will not be allowed on unliquidated claims until the amount owing is determined.

"[w]here a claim is for unliquidated damages, the amount of which is not susceptible of ascertainment by computation or by reference to market values, interest will not be allowed prior to judgment." Storey & Fawcett v. Nampa etc. Irr. Dist., 32 Idaho 713, 718, 187 P. 946 (1920).

Galvin v. Appleby, 78 Idaho 457, 305 P.2d 309 (1956); Williams v. Idaho Potato Starch Co., 73 Idaho 13, 245 P.2d 1045 (1952); Coeur d'Alenes Lead Co. v. Kingsbury, 59 Idaho 627, 85 P.2d 691 (1938); Gridley v. Ross, 37 Idaho 693, 217 P. 989 (1923); Medling v. Seawell, 35 Idaho 333, 207 P. 137 (1922). Here the amount due was susceptible of ascertainment by computation and reference to market values. Moreover, plaintiff was entitled to an accounting from defendant for the wrongful use of the partnership assets in his continuance of the farming business. In the absence of such accounting, the court was justified in awarding interest to the plaintiff on the amount found due from the date of dissolution to the date of judgment.

"While it is quite impossible to lay down any unbending rule on the question whether interest should be allowed or disallowed on partnership accounts, the general rule appears to be that in the absence of an agreement to the contrary, interest is not to be allowed on partnership accounts until after a balance is struck, but may be charged if under the circumstances of the particular case the equities so require. Its allowance or disallowance is, to a large extent, discretionary with the court, and depends largely on the circumstances of the particular case. * * *" 40 Am.Jur., Partnership, § 353.

68 C.J.S. Partnership § 397; Speka v. Speka, 124 Cal.App.2d 181, 268 P.2d 129 (1954); Watson v. Kellogg, 129 Cal.App. 592, 19 P.2d 253 (1933); Bowman v. Carroll, 120 Cal.App. 309, 7 P.2d 734.

In Evans v. Gunnip, 36 Del.Ch. 589, 135 A.2d 128, 134, 65 A.L.R.2d 513 (1957), the court said:

"We think that an unreasonable delay after dissolution or an unjustifiable refusal to account may cause the court to charge a partner responsible for such delay with interest on the funds for which he should have accounted. This is especially true in a case where

a partner who upon dissolution of the partnership holds the assets of the firm and is entrusted with the duty of winding up its affairs not only neglects to settle the account but transfers the assets of the firm for his own benefit."
Judgment affirmed.
Costs to respondent.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.