## IN THE SUPREME COURT OF THE STATE OF IDAHO
## No. 44791

DAVID JOHNSON, an individual, and
TESSA COUSINS, an individual,

    Plaintiffs-Appellants,

v.

DAVID CROSSETT, an individual,

    Defendant-Respondent,

and

SCOTT H. LEE, an individual; DRUG
TESTING COMPLIANCE GROUP, LLC,
an Idaho limited liability company; VURV,
LLC, an Idaho limited liability company;
BO W. and KRYSTAL SCHMELLING, a
married couple,

    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2017 Term

2018 Opinion No. 6

Filed: January 10, 2018

Karel A. Lehrman, Clerk

Appeal from the District Court of the Fourth Judicial District of the
State of Idaho, Ada County.  Hon. D. Duff McKee, District Judge.

The district court's judgment is <u>affirmed</u>.  Attorney fees and
costs on appeal are <u>awarded</u> to respondent.

Jacobson & Jacobson, PLLC, Boise, attorneys for appellant. James F.
Jacobson argued.

Points Law, PLLC, Boise, attorneys for respondent. Michelle R. Points
argued.

_____

JONES, Justice.

## I. NATURE OF THE CASE

1

This case arises from an oral agreement between David Crossett ("Crossett") and David Johnson ("Johnson") to form a limited liability company ("LLC"). After Crossett formed the LLC, Johnson backed out by refusing to sign the written operating agreement. Crossett remained as the sole member of the LLC, which he eventually sold. Johnson and Tessa Cousins ("Cousins"), the LLC's only employee, filed a complaint against Crossett, wherein they asserted, *inter alia*, that: (1) they were members of the LLC since its inception; and (2) Crossett had breached his fiduciary duties. The district court dismissed the case after concluding that Johnson and Cousins were never members of the LLC because they had refused to sign the written operating agreement. We affirm the district court's judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Around 2012, or early 2013, Johnson learned that his brother-in-law ("Brother-In-Law") had recently started a call center business that provided drug and alcohol testing services to commercial drivers. The business was aimed at a niche market created by federal regulations that required commercial drivers to establish and maintain drug and alcohol compliance plans for their trucking operations. Brother-In-Law claimed that his business was lucrative, which piqued Johnson's interest. In the early months of 2013, Johnson spoke with Crossett about starting a business similar to Brother-In-Law's business. By April 2013, Johnson and Crossett had reached an oral agreement (the "Oral Agreement"), which included the following general terms: Crossett would be the sole agent and manager, receive a fixed salary (which would be paid before any profit distributions), and own a 46% interest. Further, according to the Oral Agreement, Johnson would not be involved in day-to-day operations, nor would he receive any fixed compensation, but he would own a 44% interest. The two men also agreed that Crossett would contact Cousins, who was an employee at Brother-In-Law's company, to recruit her to their company. Cousins joined the company in May 2013. The terms of her employment are unclear besides the fact that she was to receive a fixed salary and, at some point, a 10% interest in the company. However, Cousins was not a part of the Oral Agreement.

In June 2013, Crossett filed a certificate of organization to form the company, Drug Testing Compliance Group, LLC ("DTC"), as a single-member LLC. Crossett was the sole member upon filing. By the end of July 2013, a complete, written operating agreement (the "Written Agreement") was prepared and approved by Johnson and Crossett; however, it was never signed. Notwithstanding the fact that the Written Agreement remained unsigned, DTC

2

opened for business in July 2013. Shortly after opening, DTC was sued by Brother-In-Law's company. Due to the lawsuit, Johnson refused to sign the Written Agreement because he did not want Brother-In-Law, or any other members of his extended family, to know that he was associated with DTC, which was in direct competition with Brother-In-Law's company. Johnson went so far as to sign a written statement for Brother-In-Law's attorney, which was not under oath, wherein he "confessed" that he had mentioned to Crossett that Brother-In-Law ran a successful drug testing business. Although Johnson characterized the statement as a confession, he did not disclose that he was associated with DTC. Johnson told his wife that he planned to keep his interest in DTC a secret. Johnson told Crossett that he would sign the Written Agreement once "the dust settled."

Crossett grew DTC's business quickly. In 2013, it grossed nearly $200,000, and, in 2014, it grossed nearly $1.1 million; however, with the rapid growth came a flood of management problems including: serious cash flow issues, high rates of cancellation caused by bad publicity, and significant legal fees from defending against Brother-In-Law's lawsuit. The initial lawsuit with Brother-In-Law's company was settled in early 2014, but another lawsuit between the companies started later that year. On October 2, 2014, Cousins tendered a letter of resignation. She was paid all of the money that she was owed.

In late 2014, Crossett insisted that Johnson sign the Written Agreement and join him in personally guaranteeing some of the $200,000 that was due to DTC's attorneys. Johnson refused to sign the Written Agreement, claiming that all of DTC's problems were Crossett's to solve. Johnson stated that he would not sign the Written Agreement until those problems were resolved.

Johnson and Crossett could not come to terms, and Crossett finally declared that he would continue to operate DTC as a single-member LLC and do what he could to salvage the business. Johnson was repaid about $10,000—the money that he had originally invested for office equipment and supplies. Johnson acknowledged that he had been fully repaid as of December 2014.

Sometime after parting ways with Johnson, Crossett consulted with Scott Lee, who was familiar with call center operations. Crossett and Lee agreed that DTC's sales would be outsourced to a separate call center that Lee would manage. This separate call center, named Vurv, was formed by Crossett and Lee as an LLC. Notwithstanding the fact that all of DTC's sales were outsourced to Vurv, Crossett continued to operate DTC as a separate company

3

through 2015. However, due to DTC's serious cash flow problems and mounting legal debt, Crossett agreed to sell all of DTC's assets to Vurv in exchange for the payment of DTC's debts. This transaction closed in December 2015. Prior to the sale, DTC was insolvent: its assets did not exceed $50,000 and its liabilities were between $240,000 and $280,000. After the sale, DTC was a shell of a company with no assets or liabilities.

On August 10, 2015, Johnson filed a complaint against Crossett, and on April 8, 2016, Johnson filed an amended complaint, which added Cousins as a plaintiff. In the amended complaint, Johnson and Cousins (collectively, "Appellants") alleged, *inter alia*, that: (1) they were and always had been members of DTC; (2) Crossett improperly expelled them from DTC; (3) Crossett failed to properly distribute DTC profits; and (4) Crossett breached his fiduciary duties as a member and a manager of DTC. The amended complaint included the following allegation, which is a focus of Appellants' argument on appeal:

> 14. On or about June 5, 2013, Defendant filed, *on behalf of the business that Plaintiffs and Defendant Crossett had formed*, articles of organization for an Idaho limited liability company, listing himself *as a Member* or Manager and as the registered agent. The limited liability company was named "Drug Testing Compliance Group, LLC."

(Emphasis added). Crossett admitted to this allegation (the "Admission") in his answer.

A two-day bench trial was held on October 17 and 18, 2016, and on November 1, 2016, the district court issued its findings of fact, conclusions of law, and directions for entry of judgment. After a thorough review of the facts, which included several references to trial testimony from Johnson, Crossett, Cousins, and Lee, the district court found that the Oral Agreement served as an operating agreement for DTC to the extent that it was an agreement to operate DTC until the Written Agreement was ready to be signed. Specifically, the district court found that, according to the Oral Agreement, Johnson and Cousins would only become members once they signed the Written Agreement.

The district court found that Johnson attempted to unilaterally change the Oral Agreement by refusing to sign the Written Agreement when it was ready to be signed in July 2013. The district court noted that Johnson's refusal to sign the Written Agreement left Crossett holding the bag as the sole member of DTC with all the risk of carrying the company's operations forward.

4

The district court held that Appellants failed to prove that they were members of DTC. The district court concluded that Cousins never became a member of DTC because she was not a party to the Oral Agreement and she never signed the Written Agreement. The district court held that, although Johnson and Crossett agreed at the outset that they would both be members of DTC (with Cousins to be included as a member at a later time), the Oral Agreement included an understanding that Appellants would become members when they signed the Written Agreement; therefore, Appellants never became members of DTC because they refused to sign the Written Agreement.

The district court quickly disposed of the two remaining allegations: (1) Crossett did not breach any fiduciary duty as to Appellants because Appellants were paid all of the money that they were owed and were not members of DTC; and (2) Crossett was not liable for the money he withdrew from DTC because Appellants had failed to prove that those withdrawals exceeded what Crossett was owed for his managerial duties.

On November 23, 2016, Appellants filed a motion for a new trial arguing that: (1) the district court abused its discretion by ignoring Crossett's Admission; (2) there was insufficient evidence to justify the verdict because the great weight of the evidence indicated that Appellants were members of DTC; (3) there was insufficient evidence to justify the verdict regarding damages and liabilities; and (4) the district court committed clear error by ignoring the Idaho Uniform Limited Liability Act (the "LLA")–Idaho Code sections 30-6-101 *et seq.*[1] On December 9, 2016, a hearing occurred on the motion for a new trial. Neither a transcript of the hearing, nor a decision on Appellants' motion was included in the record on appeal.

On December 16, 2016, the district court awarded Crossett attorney fees pursuant to Idaho Code section 12-120(3). On December 21, 2016, the district court issued a final judgment. Appellants filed a timely notice of appeal.

### III. ISSUES ON APPEAL

1. Whether the district court erred by concluding that Appellants were not members of DTC.

---

[1] All citations to the code are to the version that was in effect at the time of trial. The LLA was repealed effective July 1, 2017 by Idaho Session Law chapter 243, section 2, and has been recodified at Idaho Code section 30-25-101 et seq. "The purpose of the legislation is to harmonize Idaho's unincorporated and incorporated entity statutes so they can be integrated into a single code of entity laws. This legislation . . . makes technical revisions and does not change the substance of the statutes." 2015 Idaho Laws Ch. 243 (S.B. 1025).

**2.** Whether the district court erred in interpreting or applying the LLA.

**3.** Whether the district court abused its discretion by denying Appellants' motion for a new trial.

**4.** Whether the district court erred by granting Crossett attorney fees below pursuant to Idaho Code section 12-120(3).

**5.** Whether Crossett is entitled to attorney fees on appeal.

## IV. STANDARD OF REVIEW

> On review by this Court, a trial court's conclusions following a bench trial will be limited to a determination of whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law. *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009). This Court will "liberally construe the trial court's findings of fact in favor of the judgment entered, as it is within the province of the trial court to weigh conflicting evidence and testimony and judge the credibility of witnesses." *Id.*; *see also Beckstead v. Price*, 146 Idaho 57, 61, 190 P.3d 876, 880 (2008) (regarding findings of fact in view of the trial court's role as trier of fact). This Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial. *Panike & Sons Farms, Inc. v. Smith*, 147 Idaho 562, 565–66, 212 P.3d 992, 995–96 (2009). Only erroneous findings will be set aside. *Id.* at 565, 212 P.3d at 995. Also, this Court has always held that its view of the facts will not be substituted for that of the trial court. *See Weitz v. Green*, 148 Idaho 851, 857, 230 P.3d 743, 749 (2010). Finally, conclusions of law are freely reviewed by this Court, drawing its own conclusions from the facts presented in the record. *Griffith v. Clear Lakes Trout Co.*, 146 Idaho 613, 619, 200 P.3d 1162, 1168 (2009).

*Watkins Co., LLC v. Storms*, 152 Idaho 531, 535, 272 P.3d 503, 507 (2012).

> "A trial court has wide discretion to grant or refuse to grant a new trial, and, on appeal, this Court will not disturb that exercise of discretion, absent a showing of manifest abuse." *State v. Cantu*, 129 Idaho 673, 674, 931 P.2d 1191, 1192 (1997). When determining whether the district court abused its discretion, this Court conducts a three-tiered inquiry:
>
> > (1) whether the lower court rightly perceived the issue as one of discretion;
> > (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and
> > (3) whether the court reached its decision by an exercise of reason.

*State v. Taylor*, 157 Idaho 186, 194, 335 P.3d 31, 39 (2014).

"Whether a district court has correctly determined that a case is based on a commercial transaction for the purpose of I.C. § 12–120(3) is a question of law over which this Court exercises free review." *Garner v. Povey*, 151 Idaho 462, 469, 259 P.3d 608, 615 (2011) (citing *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 470, 36 P.3d 218, 222 (2001)).

V. ANALYSIS

**A.** **Appellants have failed to demonstrate that the district court erred in finding that they were not members of DTC.**

Appellants argue that the district court erred by finding that they were not members of DTC despite the conflicting evidence, *i.e.*, the Admission. Appellants focus on two parts of the Admission: (1) that Crossett "filed, on behalf of the business *that [Appellants] and Crossett had formed*, articles of organization for an Idaho limited liability company;" and (2) Crossett listed "himself as *a* Member . . . ." (Emphasis added). Appellants contend that the first part of the Admission clearly indicates that Crossett filed a certificate of organization with the intent that Appellants and Crossett were the initial members of DTC, which they had already formed together via the Oral Agreement. Appellants contend that the second part of the Admission should have precluded the district court from concluding that Crossett had formed a single-member LLC because he listed himself as "*a* Member." Appellants imply that if Crossett was truly the sole member of DTC, he would have denied their allegation, at least in part, because he was "*the* Member" not merely "*a* Member." Appellants conclude their argument by asserting that the district court's error was not harmless because it formed the basis of the conclusion that Crossett owed no duty to Appellants.

Idaho Rule of Civil Procedure 36(b) provides that a matter admitted in an answer "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." I.R.C.P. 36(b).

> [A]n appellant bears the burden of providing a record that is sufficient to substantiate his or her claims on appeal. Indeed, not only is error not presumed, but if a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the trial court.

*Poole v. Davis*, 153 Idaho 604, 607–08, 288 P.3d 821, 824–25 (2012) (citations omitted).

We affirm the district court's finding that Appellants were not members of DTC because Appellants have failed to demonstrate that the district court's finding was erroneous. The record on appeal is sparse and does not include a transcript from the two-day bench trial. Accordingly, we are left to rely heavily on a handful of relevant exhibits and the district court's findings of fact, conclusions of law, and directions for entry of judgment. Moreover, according to *Poole*, we must presume that the absent portion of the record—most notably, the trial transcript—supports the district court's findings.

7

Simply put, Appellants' reliance on the Admission is flimsy, at best. Appellants argue that the first part of the Admission indicates that Crossett filed the certificate of organization with the *intent* that Appellants and Crossett were the initial members of DTC, which they had already formed together via the Oral Agreement. This argument is unpersuasive because Crossett's intent is irrelevant. The district court did not find that Crossett did not intend for Appellants to become members of DTC. On the contrary, the district court found that, according to the Oral Agreement, the parties intended that they would all become members of DTC after the Written Agreement was signed. However, because Appellants never signed the Written Agreement, the district court held that they never became members of DTC. In sum, the first part of the Admission does not demonstrate that the district court's finding was clearly erroneous.

The second part of the Admission states that Crossett was "a Member or Manager." Appellants argue that this Admission should have precluded the district court from concluding that Crossett had formed DTC as a single-member LLC. This argument is similarly unpersuasive. Crossett could have been more specific by clarifying that he was "*the* Member" not "*a* Member." But, Crossett's lack of specificity alone is not enough to render the district court's finding erroneous. In sum, we must presume that the absent portion of the record supports the district court's finding that Appellants were not members of DTC. Although it is possible to interpret the Admission as being in conflict with the district court's finding, "[t]his Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial." *Watkins Co.,* 152 Idaho at 535, 272 P.3d at 507 (citing *Panike & Sons Farms, Inc. v. Smith*, 147 Idaho 562, 565–66, 212 P.3d 992, 995–96 (2009)).

B.     **Appellants have failed to demonstrate that the district court erred in interpreting or applying the LLA.**

The crux of Appellants' argument is that the district court erred by allowing the unsigned Written Agreement to undercut the parties' Oral Agreement, which was a valid operating agreement. Specifically, Appellants take issue with the following statement of the district court:

> Once the [W]ritten [A]greement was vetted by counsel and approved by the parties, the [O]ral [A]greement[] between Crossett and Johnson [was] insufficient to stand as an oral operating agreement, at least with respect to the admission of Cousins and Johnson as members.

Appellants allege that the district court ignored section 102(15) of the LLA, which provided that an LLC operating agreement may be "oral, in a record, implied, or in any combination thereof."

The LLA provided that an operating agreement may be oral. I.C. § 30-6-102(15) (repealed effective July 1, 2017). In addressing how individuals may become members of an LLC, the LLA provided as follows:

> If a limited liability company is to have more than one (1) member upon formation, those persons become members as agreed by the persons before the formation of the company. The organizer acts on behalf of the persons in forming the company and may be, but need not be, one (1) of the persons.

I.C. § 30-6-401(2).

Appellants' argument is meritless because it relies on a gross mischaracterization of the district court's decision. The district court acknowledged that an LLC operating agreement may be oral, and it found that the Oral Agreement was a valid operating agreement for DTC. Thus, Appellants' argument—that the district court ignored that an LLC operating agreement may be oral—is clearly incorrect. After concluding that the Oral Agreement was a valid operating agreement, the district court determined what terms were included in the Oral Agreement. To that end, the district court stated: "I find as a fact that the [O]ral [A]greement with regard to Cousins and Johnson was that they would become members upon signing the [Written] [A]greement." Later in its analysis, the district court reasoned: "Once the [W]ritten [A]greement was vetted by counsel and approved by the parties," the Oral Agreement was "insufficient to stand as an oral operating agreement, at least with respect to the admission of Cousins and Johnson as members." Appellants take this statement out of context and imply that the district court held that any oral operating agreement may be undermined by the mere drafting of a written operating agreement. The district court made clear that it was not the mere drafting of the Written Agreement, in the abstract, that undermined the Oral Agreement; rather, per the Oral Agreement, once the Written Agreement was ready to be signed, Appellants could only become members by signing. In sum, Appellants have presented nothing from the record that would show that the district court erred in interpreting or applying the LLA. Therefore, we hold that the district court did not err by holding that Appellants were not members of DTC according to the Oral Agreement.

9

**C.** **We will not review Appellants' allegation that the district court abused its discretion by denying their motion for a new trial because the issue was not preserved for appeal.**

Appellants allege that the district court abused its discretion by denying their motion for a new trial. We will not review Appellants' allegation because the issue was not preserved for appeal. "This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009) (quoting *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368–69, 179 P.3d 323, 331–32 (2008)). Even if an issue was argued to a lower court, "to preserve an issue for appeal there must be a ruling by the [lower] court." *Id.* (citing *De Los Santos v. J.R. Simplot Co., Inc.*, 126 Idaho 963, 969, 895 P.2d 564, 570 (1995)). According to the record on appeal, a hearing on Appellants' motion for a new trial occurred on December 9, 2016. However, it does not appear that the district court ruled on the motion. Therefore, because the record does not disclose an adverse ruling forming the basis for Appellants' assignment of error, we will not review Appellants' allegation.

**D.** **The district court did not err by granting attorney fees below to Crossett because the gravamen of the lawsuit was a commercial transaction, *i.e.*, the Oral Agreement.**

Appellants argue that the district court erred by granting attorney fees below to Crossett pursuant to Idaho Code section 12-120(3). Appellants note that, under Idaho Code section 12-120(3), the prevailing party in a civil action shall be awarded reasonable attorney fees when a commercial transaction is integral to the claim and constitutes the basis upon which the party is attempting to recover. Appellants cite *Gumprecht v. Doyle*, 128 Idaho 242, 912 P.2d 610 (1995) and *Kelly v. Silverwood Estates*, 127 Idaho 624, 903 P.2d 1321 (1995) for the proposition that an action to enforce a statutory penalty or right is not a commercial transaction. Appellants assert that, although this action depends on a contractual relationship, each claim is based on recovery under the LLA. As a result, Appellants argue that because the claims are based on a statutory theory of recovery, *i.e.*, the LLA, attorney fees should not have been awarded below pursuant to Idaho Code section 12-120(3).

> Idaho Code section 12-120(3) mandates that when "the gravamen of a lawsuit" is a commercial transaction, the prevailing party is entitled to attorney's fees. *Kugler v. Nelson*, 160 Idaho 408, 413, 374 P.3d 571, 579 (2016). Under the statute, a

"commercial transaction" is any "transaction[ ] except transactions for personal or household purposes." I.C. § 12-120(3).

*Prehn v. Hodge*, 161 Idaho 321, 331, 385 P.3d 876, 886 (2016).

In *Prehn v. Hodge*, the plaintiffs, who were former members of an LLC, brought individual and derivative claims against the former founder of the LLC. 161 Idaho at 323–26, 385 P.3d at 878–81. This Court affirmed the district court's award of attorney fees as to the individual claims, pursuant to Idaho Code section 12-120(3), and as to the derivative claims, pursuant to the LLA. *Id.* at 331, 385 P.3d at 886. Further, this Court awarded plaintiffs/respondents' attorney fees on appeal according to Idaho Code section 12-120(3), notwithstanding the fact that the underlying claim related to their LLC. *Id.* at 331–32, 385 P.3d at 886–87.

In *Gumprecht v. Doyle*, the underlying cause of action was between an individual, Gumprecht, and a corporation, VENT. 128 Idaho 242, 912 P.2d 610. Gumprecht filed his complaint in an attempt to recover statutory penalties under Idaho Code section 30-1-52 (repealed in 2015), which provided that a corporation shall be liable for a penalty of $50 per day for each day that a shareholder is refused access to the corporation's books, records, and minutes. *Id.* at 244, 912 P.2d at 612. The district court denied attorney fees under Idaho Code section 12-120(3), and this Court affirmed the denial after finding that the gravamen of the suit was not a commercial transaction because the suit was based on statutory penalties provided in Idaho Code section 30-1-52. *Id.* at 245, 912 P.2d at 613.

In *Kelly v. Silverwood Estates*, the underlying cause of action was filed by the Kellys, as individuals, against Silverwood Estates, a partnership. 127 Idaho at 627, 903 P.2d at 1324. Specifically, the Kellys filed an action for a decree of dissolution, a formal accounting, a wind up of partnership affairs, and a distribution of partnership assets, which were all governed by Idaho partnership law. *Id.* at 627, 903 P.2d at 1324. This Court held that attorney fees under Idaho Code section 12-120(3) were not appropriate because "[t]he gravamen of this case was an effort to enforce a statutory scheme of dissolution." *Id.* at 631, 903 P.2d at 1328.

We affirm the district court's award of attorney fees to Crossett. Although the LLA was related to the action, the gravamen of the action was a dispute between individuals for a claimed contractual breach, *i.e.*, the Oral Agreement, which was a commercial transaction. While the LLA addressed attorney fees for a derivative action, it did not address attorney fees for an action

between LLC members. Further, the LLA provided that an LLC member who is owed a distribution from an LLC is entitled to all remedies that would be available to an LLC creditor, which would include attorney fees under Idaho Code section 12-120(3). *Kelly* and *Gumprecht* do not support Appellants' position because the gravamen of both actions related to the enforcement of statutory provisions. Conversely, the gravamen of Appellants' action was a claim between individuals for damages in failing to divide the profits of an enterprise as was allegedly agreed. In sum, we affirm the district court's award of attorney fees because a commercial transaction was integral to Appellants' claim and was the basis upon which they sought recovery.

**E.    Crossett is entitled to attorney fees on appeal.**

Crossett argues that, in the event that he prevails on appeal, he should be awarded attorney fees on appeal pursuant to Idaho Code section 12-120(3). Crossett argues that he is entitled to attorney fees on appeal because the crux of the action is the Oral Agreement, which was not a transaction for personal or household purposes. We award attorney fees on appeal to Crossett for the same reasons stated above.

## VI. CONCLUSION

We affirm the district court's judgment and award attorney fees and costs on appeal to Crossett.

Chief Justice BURDICK and Justices HORTON, BRODY and BEVAN, CONCUR.