IN THE SUPREME COURT OF THE STATE OF IDAHO

Docket No. 37685

THE WATKINS COMPANY, LLC, an Idaho
limited liability company,

    Plaintiff/Respondent/Cross-Appellant,

v.

MICHAEL STORMS and KATHY
BURGGRAF,

    Defendants/Appellants/Cross-
    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2012 Term

2012 Opinion No. 41

Filed:  March 2, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County.  Hon. Joel E. Tingey, District Judge.

District court decision regarding commercial lease, underline affirmed in part and vacated in part.

Cox, Ohman & Brandstetter, Chartered, Idaho Falls, for appellant.  Dean C. Brandstetter argued for appellants/cross-respondents Michael Storms and Kathy Burggraf.

Smith, Driscoll & Associates, PLLC, Idaho Falls, for respondent.  B. J. Driscoll argued for respondent/cross-appellant The Watkins Company, LLC.

_____

BURDICK,  Chief Justice

This case concerns a commercial lease between Michael Storms and Kathy Burggraf and the Watkins Company, LLC's predecessor in interest, Watkins and Watkins for a restaurant and microbrewery in Idaho Falls, Idaho.  Watkins filed a lawsuit seeking to enforce the lease after Storms and Burggraf failed to timely pay the rent.  The issues were tried before the district court, which found that Storms and Burggraf had materially breached the lease and that Watkins could regain possession of the property.  The district court also found that Storms and Burggraf had been unjustly enriched by failing to pay rent for additional storage space.  Further, the district court found that the lease's provision for accelerated rent was a liquidated damages clause and

1

found it be unconscionable. Storms and Burggraf now appeal the district court's decision, arguing that an accord and satisfaction had been reached between the parties and that the court erred in its finding of the rent for the upstairs storage area above the restaurant. Watkins argues on cross-appeal that the district court based its finding regarding the accelerated rent on insufficient evidence. Because of an error in the district court's finding regarding the upstairs storage area, we vacate that part of the court's order but uphold the remaining issues addressed in the court's decision.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On November 19, 2008, the Watkins Company, LLC (Watkins), successor in interest to Watkins and Watkins, filed a ten-count complaint with demand for jury trial against Michael Storms and Kathy Burggraf (Storms) that included causes of action for breach, unjust enrichment, and eviction in relation to a thirty year commercial lease for a restaurant and microbrewery (Brownstone) operated by Storms in Idaho Falls, Idaho. The lease had an affirmative clause stating any disputes were to be settled in a court trial. An addendum to the lease states that Storms was to pay the greater of either the base rent indicated in the lease or 5% of the gross sales of the entire operation on the premises each month, excluding the initial months covered by prepaid rent. An additional addendum provided for the responsibility of maintenance costs for the leased building's roof. Watkins sought damages for Storms' failure to timely pay rent, failure to provide monthly sales figures, and failure to pay an appropriate percentage of roof repairs. Watkins also alleged that Storms had been unjustly enriched by receiving the benefit of storage without pay, and sought acceleration of the rent and eviction. Storms filed an answer also demanding a jury trial.

After filing a motion for partial summary judgment, Watkins received permission to file an amended complaint and added a count for breach, alleging Storms had failed to provide a monthly food and drink credit. On August 13, 2009, the district court granted in part and denied in part, Watkins' partial summary judgment motion. The district court denied Watkins' request to evict Storms from using the sidewalk and curb area for outdoor dining, but granted eviction from an upstairs storage space and a contiguous space to Brownstone in the building that Storms was using for storage without paying rent. The district court also ruled as moot the request to evict Storms from an outdoor area described as the "pipeyard" where Storms stored a walk-in cooler because he had removed the cooler.

On January 8, 2010, the district court ruled on the parties' cross-motions for partial summary judgment filed in December 2009. The district court granted Watkins' request that the court rule that the addendum regarding the 5% gross sales to be paid in rent if greater than the base amount was an unambiguous provision. The district court, based on the doctrine of accord and satisfaction, rejected Storms' argument that he did not owe any amounts prior to September 12, 2008. The district court ruled that the three day notices that Storms based this argument on were vague and ambiguous and would be left to the interpretation of a trier of fact at trial.

An Order was filed January 12, 2010, enforcing the parties' agreement in the lease for a court trial, ruling that there had not been a mutual understanding to modify the agreement and allow a jury trial. A court trial was held February 9-10, 2010, and the district court filed its Findings of Fact and Conclusions of Law on March 16, 2010. The district court concluded that Storms materially breached the contract, awarding $43,096.25 in damages to Watkins for the breach and unjust enrichment. Watkins was entitled to evict Storms and regain possession of the property.

In its findings of fact, the district court found that Storms had failed to pay $21,880.00 of rent since November 2003 when the 5% of gross sales exceeded the base rent and that Storms had overpaid $923.00 in base rent. Storms had also failed to provide Watkins with a food and drink credit since December 2007. Additionally, pursuant to an oral agreement, the district court found that Storms stored goods in an upstairs storage area, paying $100 per month, even after Watkins increased the rent by letter for the upstairs area to $750 in June 2008. Also, in June 2008, Watkins no longer allowed Storms to store items in a contiguous suite and asked them to vacate the space.

Surrounding the issue of the back rent owed by Storms, the district court made the following findings of fact:

- In May 2007, a bridge providing access to Brownstone was damaged and Watkins diverted traffic away from the bridge.
- The bridge remained closed until April 2008.
- Between November 2007 and March 2008, Storms withheld partial rent in response to Watkins' alleged failure to repair the bridge.
- Storms also withheld partial rent during 2008 for Watkins' alleged failure to repair the Brownstone leaking roof.
- Watkins' attorney sent Storms a notice on June 12, 2008, which addressed many issues and demanded Storms to pay $34,025.00 and requested gross sales information.

3

- Storms did not pay the requested amount or provide gross sales information.
- On July 10, 2008, Watkins' attorney sent Storms a notice labeled "Three Day Notice to Pay Rent or Quit the Premises" demanding $17,900.00 in unpaid rent, stating that "if Storms paid the full amount listed therein within three days, then he 'may remain in possession of the premises and in compliance with the lease agreement.'"
- Storms paid the requested amount within the three days.
- On September 12, 2008, Storms was sent an additional "Three Day Notice to Pay Rent or Quit the Premises" notice with the same compliance language, demanding $6,219.00.
- Storms again timely paid the requested amount.

Interpreting the lease, the district court concluded that no provision in the lease allowed Storms to withhold rent and that failure to pay the rent was a breach. The district court also interpreted the three day notices as being based on a calculation of the base rent, and that the language used did not "unequivocally indicate" the payment would represent full payment of the rent, but only that Storms "may" remain in compliance. Further, Storms did not meet his burden of proving all elements for accord and satisfaction regarding any amount that might be owed pursuant to the 5% gross sales rent provision; nor had he shown that a conspicuous statement of full satisfaction of all claims had been made on the negotiable instrument. However, Storms did show that an accord and satisfaction had been met as to the amount that would be owed under the base rent. During that time, the district court found that Storms had failed to pay the 5% gross pay rent and that this failure was a breach. The district court found that a lease provision for 1% fee on delinquent rent applied, as well as a provision for late fees of $100 for each late payment. As to the cooler storage in the "pipeyard," no inequity was shown to exist pre-notice for non-payment of rent for storage, but post-notice, the district court found unjust enrichment and ruled that $100 per month was fair value for the cooler's storage until its removal. As to the remaining issues, the district court also concluded that the accelerated rent provision was unenforceable, that Storms owed nothing further than what he had already forwarded for roof maintenance, and that Storms had not been unjustly enriched by using the outside dining area.

Following briefing on the issues of prejudgment interest and costs and attorney fees, the district court filed an Order on April 21, 2010. The district court ruled that Watkins was the prevailing party because it had prevailed on what the court viewed as the main issue—breach of contract and failure to pay the agreed amount of rent. Accordingly, the district court awarded Watkins costs under I.R.C.P. 54(d)(1)(C) and attorney fees under I.C. § 12-120(3) since the main

4

issues at trial were based on a commercial transaction. The district court also concluded that Watkins was entitled to prejudgment interest on those claims where the damages were "mathematically ascertainable." A timely notice of appeal was filed, followed by a notice of cross-appeal.

## II. STANDARD OF REVIEW

On review by this Court, a trial court's conclusions following a bench trial will be limited to a determination of whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law. *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009). This Court will "liberally construe the trial court's findings of fact in favor of the judgment entered, as it is within the province of the trial court to weigh conflicting evidence and testimony and judge the credibility of witnesses." *Id.*; *see also Beckstead v. Price*, 146 Idaho 57, 61, 190 P.3d 876, 880 (2008) (regarding findings of fact in view of the trial court's role as trier of fact). This Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial. *Panike & Sons Farms, Inc. v. Smith*, 147 Idaho 562, 565-66, 212 P.3d 992, 995-96 (2009). Only erroneous findings will be set aside. *Id.* at 565, 212 P.3d at 995. Also, this Court has always held that its view of the facts will not be substituted for that of the trial court. *See Weitz v. Green*, 148 Idaho 851, 857, 230 P.3d 743, 749 (2010). Finally, conclusions of law are freely reviewed by this Court, drawing its own conclusions from the facts presented in the record. *Griffith v. Clear Lakes Trout Co.*, 146 Idaho 613, 619, 200 P.3d 1162, 1168 (2009).

## III. ANALYSIS

### A. The district court did not err by enforcing the parties' agreement for a court trial.

On appeal, Storms argues as his first issue that it was improper to allow Watkins to withdraw the demand for a jury trial and seek to enforce the parties' contract provision to waive the right to a jury trial. We disagree.

"A trial by jury may be waived . . . in civil actions by the consent of the parties, signified in such manner as may be prescribed by law." Idaho Const. Art. I, § 7. Here, the parties agreed by contract to waive the right to a jury trial. The provision in the lease stated, in part, that "the parties agree that the matter shall be tried by the court without a jury and each party specifically waives the right to a jury trial . . . ." The lease also includes a merger clause which states that the

agreement between the parties "may be modified only by a writing signed by both parties." However, both parties demanded jury trials in their respective pleadings. Four weeks before the trial, Watkins filed a motion seeking to enforce the contract's jury trial-waiver clause. Storms argued that the clause had been modified by consent when they each requested a jury trial. The district court found that the lease agreement was not modified by consent and that the clause was enforceable.

Here, there was no modification to the contract as there was no writing signed by both parties. "'If the written agreement is complete upon its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract.'" *Kimbrough v. Reed*, 130 Idaho 512, 515, 943 P.2d 1232, 1235 (1997) (quoting *Valley Bank v. Christensen*, 119 Idaho 496, 498, 808 P.2d 415, 417 (1991)). The pleadings were not signed by both parties, nor were they verified. However, this Court has recognized that a contract may be modified by mutual consent. *Ore-Ida Potato Prod., Inc. v. Larsen,* 83 Idaho 290, 293, 362 P.2d 384, 385 (1961). As with all modifications, the terms of a contract cannot be altered by one party without the other party's approval. *Id.* at 296, 362 P.2d at 387. Additionally, the minds of the parties must meet as to the proposed modification. *Id.* "The fact of agreement may be implied from a course of conduct in accordance with its existence and assent may be implied from the acts of one party in accordance with the terms of a change proposed by the other." *Id.* Whether an alleged modification is proven "is one for the trier of the facts to decide." *Res. Eng'g, Inc. v. Siler*, 94 Idaho 935, 938, 500 P.2d 836, 839 (1972).

The district court found no evidence that the parties reached an agreement or meeting of the minds, and stated that the course of conduct in this case did not establish a modification. The district court further found that the jury trial demands were done independently without an intention to modify the clause. Now on appeal, Storms argues that once the demand for a jury trial was made, such demand could not be withdrawn, basing his argument on I.R.C.P. 38(d). It is true that I.R.C.P. 38(d) states "[a] demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties," but a demand for a jury trial could not be enforced by either of the parties in this case without an effectual modification. Storms has presented nothing from the record that would show that the district court's finding of no modification was

6

in error. Therefore, we find that the district court did not err by enforcing the lease's clause that waives the right to a jury trial.

**B. The payment on the Three Day Notices to Pay Rent or Quit the Premises did not establish an accord and satisfaction.**

Next, Storms argues on appeal that the district court should have found that the payments on Watkins' three day notices were an accord and satisfaction between the parties, thus precluding any recovery of previously claimed sums. Again we disagree with Storms, finding that the record before us presents no evidence of an accord and satisfaction.

"An accord and satisfaction is generally defined as a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other . . . ." *Shore v. Peterson*, 146 Idaho 903, 909, 204 P.3d 1114, 1120 (2009) (internal quotations omitted). Based on I.C. § 28-3-310, this Court has stated that the elements of an accord and satisfaction when a party is seeking to satisfy a debt by a negotiable instrument are:

> (1) the obligor in good faith tendered an instrument to the obligee as full satisfaction of the claim; (2) the amount of the claim was unliquidated or subject to a bona fide dispute; (3) the obligee obtained payment of the instrument; and (4) the instrument contained a conspicuous statement to the effect that it was tendered as full satisfaction of the claim.

*Id. at* 908-09, 204 P.3d at 1119-20 (2009).

The district court found that in this case, the negotiable instrument did not include a conspicuous statement indicating it was tendered as full satisfaction of the claim as required by the fourth element listed above. Storms argues on appeal that the notices sent by Watkins satisfy the conspicuous statement requirement. We find that the elements listed in *Shore* apply to this case as Storms attempted to discharge the debt by use of a check—a negotiable instrument. These notices were not referenced in the negotiable instrument made by Storms, nor does the record suggest that a copy of the notice was returned with the negotiable instrument. The requirement calls for a conspicuous statement on the negotiable instrument. *Id.* at 909, 204 P.3d at 1120. The record does not show, nor does Storms present, any evidence that the parties agreed that payment on the notices would be a full satisfaction of the debt. Additionally, the negotiable instrument dated September 14, 2008, for $6,219.00 has a handwritten note "Eviction Notice/Rent???" which does not suggest a conspicuous statement illustrating a full satisfaction of

the claim.[1]  In its decision, the district court found that the notices were "not intended to be, nor considered to be" an agreement between the parties in full satisfaction of all rent owed.  We find that this finding is not erroneous, and also that it is supported by substantial and competent evidence in the record.

**C. Idaho Code section 55-307 is not applicable to the determination of rent for the upstairs storage area.**

Finally, Storms argues on appeal that the rent for the upstairs storage area was part of the lease entered into by the parties and not a separate independent tenancy at will like that found by the district court.  Storms further argues that if this Court were to find that an independent month-to-month tenancy did exist, there was never an affirmative change in its terms.  We agree with Storms to the extent that his continued use of the upstairs storage area subsequent to Watkins' letter attempting to change the rental amount did not subject him to the $750 per month rent proposed by Watkins.

Paragraph 7 of Addendum D to the lease states:

> Tenant is currently remodeling the storage space over the leasehold premises, even though this space is currently not included as part of the leasehold premises.  As soon as the cost of remodeling is determined, Landlord and Tenant will meet and determine a fair price for Tenant to pay for rent on this additional space and such agreement will become an additional addendum to the lease.

The record does not include an additional addendum stating any agreement reached between the parties for the rent of the upstairs storage as required by the contract.  The district court found that the parties reached an unwritten agreement that the rent for the upstairs storage area would be $100 per month.  Further, the district court found that Watkins terminated the $100 rent in a letter dated June 12, 2008, and offered that Storms could still use the upstairs storage area for a rental fee of $750 per month.  The district court then quoted I.C. § 55-307(1)[2] and found that

---

[1] Even if we were to apply the elements of a common law accord and satisfaction without a negotiable instrument, Storms would not have met the second element, "the debtor tendered an amount to the creditor with the intent that such payment would be in total satisfaction of the debt owed to the creditor."  *See Shore*, 146 Idaho at 908, 204 P.3d at 1119.  With the record disclosing that the check included a handwritten note stating "Eviction Notice/Rent???," it would be difficult to show that Storms intended to tender the amount in full satisfaction of the debt.

[2] Idaho Code section 55-307(1) states:

> In all leases of lands or tenements, or of any interest therein from month to month, the landlord may, upon giving notice in writing at least fifteen (15) days before the expiration of the month, change the terms of the lease, to take effect at the expiration of the month. The notice, when served upon the tenant, shall of itself operate and be effectual to create and establish, as a part of the lease, the terms, rent and conditions specified in the notice, if the tenant shall continue to hold the premises after the expiration of the month.

Storms' continued use of the upstairs storage area subjected him to the $750 rental fee, and that he breached that agreement by paying the originally agreed to fee of $100 per month. On appeal we will not disrupt the factual findings of the district court unless erroneous, but we will freely review the district court's conclusions of law. *Griffith*, 146 Idaho at 619, 200 P.3d at 1168. Accordingly, we will not disturb the district court's finding that an agreement was initially reached for rental of the upstairs storage area for $100 per month, but we vacate the district court's conclusion of law regarding damages for the upstairs storage area as we find it has wrongly applied I.C. § 55-307(1) to this matter.

The June 12, 2008 letter states in pertinent part that "[t]he month to month lease for the 'upstairs' space has been $100 per month. [Watkins] hereby give [sic] you notice that he is terminating that lease. However, [Watkins] is willing to enter a new lease at the price of $750 per month for that 'upstairs' space." Idaho Code section 55-307(1) states that it applies when the landlord attempts to "change the terms of the lease." The section does not state that it applies when a landlord attempts to terminate a lease. *See Verska v. St. Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, __, 265 P.3d 502, 506 (2011) (giving words in a statute "their plain, usual, and ordinary meaning"). As Watkins sought to terminate the $100 per month lease of the upstairs storage area and enter into a new lease which would charge Storms a rental fee of $750 per month, we find that the district court improperly applied I.C. § 55-307(1) to the facts of the case and was in error when it found that Storms' continued use of the upstairs storage area subjected himself to the $750 rent. Therefore, we vacate the damages on this matter.

### D. Watkins has not met his burden regarding proof of damages for the lease's provision for future rental loss.

Watkins argues on cross-appeal that the district court's finding that the lease's provision for liquidated damages was unconscionable; was not supported by substantial and competent evidence; and that Storms did not carry his burden of proof to present evidence of rental loss that could have been reasonably avoided. Storms argues that the district court correctly ruled that the provision was unenforceable. We find that Watkins failed to prove damages pursuant to the lease. However, we uphold the district court's decision of no damages based upon a lack of proof. Ultimately, pursuant to this finding, it was proper for the district court to award no damages pursuant to the lease provision.

The clause at question here states:

**22. REMEDIES OF OWNER ON DEFAULT:** In the event of any breach of this lease by Lessee, Lessor may, at his option, terminate the lease and recover from Lessee: (a) *the worth at the time of award* of the unpaid rent which was earned at the time of termination; (b) *the worth at the time of award* of the amount by which the unpaid rent which would have been earned after termination until the time of the award exceeds the amount of such rental loss that the Lessee proves could have been reasonably avoided; (c) *the worth at the time of award* of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided; and (d) any other amount necessary to compensate Lessor for all detriment proximately caused by Lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom.

Lessor may, in the alternative, continue this lease in effect, as long as Lessor does not terminate Lessee's right to possession, and Lessor may enforce all his rights and remedies under the lease, including the right to recover the rent as it becomes due under the lease. If said breach of lease continues, Lessor may, at any time thereafter, elect to terminate the lease.

Nothing contained herein shall be deemed to limit any other rights or remedies which Lessor may have.

(Emphasis added.)

In its decision, the district court first found that there was no evidence presented regarding the present value of the unpaid rent; Watkins had simply presented evidence that nearly $1,750,000.00 would be due in rent through the end of the term of the lease. The district court then went on to analyze what it perceived as the critical issue: whether the lease's provision for accelerated rent was enforceable and "whether the liquidated damages are so disproportionate to the damages actually sustained as to be exorbitant or unconscionable." We find that this analysis was unnecessary as Watkins failed to produce evidence of the present value of its loss in unpaid rent; without such, there could be no foundation upon which the court could base an award of damages.[3]

Subsection c of paragraph 22 allows Watkins to recover "the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that [Storms] proves could be reasonably avoided." The worth at the time of an award is the same as the present value of damages. *See W.L. Scott, Inc. v.*

---

[3] Although our analysis does not reach this particular issue, we would like to point out that a dissenting opinion from this Court should not be cited by the district court as the majority opinion; rather it should be accompanied by a parenthetical that notes the dissenting Justice and why the dissent is being cited. This is especially important when the district court quotes from a party's brief that is attached as an appendix to a dissenting opinion.

*Madras Aerotech, Inc.,* 103 Idaho 736, 742, 653 P.2d 791, 797 (1982). To prove the present value of damages, a party must first show future losses and then discount the future damages to the present value by using a discount rate. *Id.* at 743, 653 P.2d at 798; *see also Cranney v. Mut. of Enumclaw Ins. Co.,* 145 Idaho 6, 10, 175 P.3d 168, 172 (2007) (W. Jones, J., specially concurring). The discount rate is a question of fact that must be determined by the trier of fact. *W.L. Scott, Inc.,* 103 Idaho at 743, 653 P.2d at 798. The discounting of future damages must be a reasonable forecast of the compensation and is based on the principle that present money is capable of earning income. *Id.*

There is no evidence in the record, and counsel at oral argument admitted that no evidence was presented in Watkins' case in chief regarding the present value amount of the unpaid rent. Further, no evidence was presented regarding a discount rate by which the court could calculate the present value. Although "[d]amages need not be proved with mathematical exactitude," *Gillingham Const., Inc. v. Newby-Wiggins Const., Inc.*, 142 Idaho 15, 26, 121 P.3d 946, 957 (2005), the burden is still upon a plaintiff in a breach of contract case to "prove not only that it was injured, but that its injury was the result of the defendant's breach; both amount and causation must be proven with reasonable certainty," *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 740, 152 P.3d 604, 611 (2007). Here, Watkins provided no evidence regarding the present value of the unpaid rent, the very damages Watkins was seeking under the contract provision. Certainly, the amount presented by Watkins for the entire amount of unpaid rent through the remaining term of the lease was not speculative, but the amount was insufficient for an award of damages as it was not adjusted to reflect the present value at the time of trial as required by the contract provision. *See Harris, Inc. v. Foxhollow Const. & Trucking, Inc.,* 151 Idaho 761, __, 264 P.3d 400, 409 (2011) (requiring plaintiff to prove damages are not speculative). Any trial strategy to simply wait for the defendant to reduce the unpaid rent to a present value amount and then rebut that evidence, as counsel seemed to suggest in oral argument, does not relieve a plaintiff of its obligation to produce the required evidence of damages in its case-in-chief. The plaintiff has the burden of production and persuasion throughout the trial. *Schroeder v. Partin*, 151 Idaho 471, __, 259 P.3d 617, 622 (2011) (citing *Cowan v. Bd. of Comm'rs of Fremont Cnty.,* 143 Idaho 501, 515, 148 P.3d 1247, 1261 (2006)). This includes the burden to prove in the case-in-chief the worth of the damages sought for the unpaid rent reduced to present value. The defendant can then attack the amount due with

mitigating evidence of the rentability, reducing the amount of the rent due and then resolving the present value of that amount.

The district court did not award damages for the lease provision at question, but for a different reason. The district court concluded that the amount presented by Watkins under the provision was more like a penalty than liquidated damages and ruled it unenforceable. Although we came to the same conclusion of no damages under the provision by a different analysis, we still uphold the district court's decision to not award damages on the lease provision. "Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003).

### E. Neither party is entitled to attorney fees on appeal.

Each party argues on appeal that they are entitled to attorney fees pursuant to I.C. § 12-120(3). This code section provides for reasonable attorney fees where a prevailing party has sought to recover in a commercial transaction. *Wakelam v. Hagood*, 151 Idaho 688, __, 263 P.3d 742, 749 (2011). As both parties prevailed in part, we find no prevailing party and do not award attorney fees on appeal. *See Keller v. Inland Metals All Weather Conditioning, Inc.*, 139 Idaho 233, 241, 76 P.3d 977, 985 (2003); *J.R. Simplot Co. v. Rycair, Inc.*, 138 Idaho 557, 565-66, 67 P.3d 36, 44-45 (2003).

## IV.    CONCLUSION

We find that the district court did not err by enforcing the contract provision that waived the right to a jury trial or in finding there was not an accord and satisfaction. We also uphold the district court's finding of no damages under the accelerated rent provision, albeit under a different theory because Watkins did not meet his burden of proving the present value of the damages. We vacate that part of the district court's order finding damages for the upstairs storage area. No fees or costs are awarded to either party.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**