**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAREL HARDENBROOK, an individual | No. 10-35967 |
| Plaintiff - Appellee, | D.C. No. 1:07-cv-00509-EJL-CWD |
| and | |
| ROBERT ORLOFF and PAUL GOOCH, individuals, | MEMORANDUM[*] |
| Plaintiffs, | |
| v. | |
| UNITED PARCEL SERVICE, INC., Delaware corporation doing business in the State of Idaho, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted May 7, 2012
Seattle, Washington

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: GOULD, BYBEE, and BEA, Circuit Judges.

Darel Hardenbrook brought suit against UPS alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination in violation of public policy. Hardenbrook's wrongful termination claim proceeded to trial and the jury returned an award of $1,436,367 in front pay and $40,000 in back pay, for a total of $1,476,367. The district court denied UPS's motion for a new trial conditioned on Hardenbrook accepting a remittitur in the amount of $713,169—or $673,169 in front pay and $40,000 in back pay, which he did. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part.

UPS argues that the district court erred in offering Hardenbrook a remittitur that includes twenty-seven years of front pay. The proper amount of a remittitur is the maximum amount sustainable by the evidence. *See D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982). "When considering an award of damages for lost future benefits, the question is whether the plaintiff has proven the damages relating to future losses with reasonable certainty." *O'Dell v. Basabe*, 810 P.2d 1082, 1098 (Idaho 1991). The factors to consider include "'the plaintiff's salary history, scheduled or mandated pay raises, and a finding based on the evidence in the record of the time which it will take the

2

plaintiff to find comparable employment with a commensurate salary, at which time the award of front pay should be discounted [sic].'" *Hummer v. Evans*, 923 P.2d 981, 985–86 (Idaho 1996) (quoting *O'Dell*, 810 P.2d at 1098, but misquoting "discontinued" as "discounted"); *see also Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987) (explaining that front pay is intended to be temporary in nature and "must be reduced by the amount [the] plaintiff could earn using reasonable mitigation efforts").

The district court rejected the jury's initial award, finding that the assumptions upon which it relied were "too speculative." In determining the proper amount of the remittitur, the district court considered Hardenbrook's expected years of employment at UPS, the comparability of Hardenbrook's jobs post-UPS, the valuation of UPS restricted stock units, and the defined benefit plans offered by UPS and Hardenbrook's subsequent employer. The district court relied on the evidence in the record, and the findings of the jury, to determine that had Hardenbrook not been fired from UPS, he likely would have remained with the company through retirement. This finding is supported by the evidence.

Additionally, the district court did not err in including the discretionary bonus provided by UPS in the front pay analysis. The evidence shows that Hardenbrook received a bonus in his two last full years with UPS, there was no

evidence presented that this bonus would cease to be paid in the future, and the evidence shows that it was unlikely that any bonus would be paid to Hardenbrook by his new employer.

The district court also did not err in rejecting UPS's argument that Hardenbrook's current job is substantially equivalent to UPS, even with a lower salary, because he is required to work significantly fewer hours. The district court found that "the value of this difference was not quantified at trial" and thus "there [wa]s no evidence upon which to value the difference." The district court did not abuse its discretion in rejecting the contention that Hardenbrook should have taken a second job to fully mitigate his damages.

UPS next claims that the district court's award double-counted back-pay damages. Based on all the evidence, the district court concluded that "the proper amount of a remittitur, or the maximum amount sustainable by the evidence, is $673,169 in front pay damages and $40,000 in back pay." The front pay figure was based entirely on the calculations offered by Hardenbrook's expert. Notably, the expert's calculations included $149,615 for "Value of Past Lost Wages and Benefits," i.e., back pay. Thus, this calculation includes both back pay and front pay damages. Because the jury explicitly found, and the district court affirmed in the remittitur, that the proper amount of back pay damages was $40,000, the

inclusion of an additional $149,615 for back pay was without support in the record and an abuse of discretion by the district court. We reverse the judgment. On remand, Hardenbrook's damages should be reduced by $149,615.

Finally, UPS contends that the district court failed to discount the restricted stock to present value. Hardenbrook's expert testified as to how he arrived at a net discount rate of zero. UPS's expert strongly objected to this analysis as "completely wrong" and "mak[ing] absolutely no sense." Although, the district court was "concerned" about the zero percent discount rate because it "seems to ignore the time value of money" and is not supported by "basic economic principles," the court accepted that rate because UPS's expert failed to provide any evidentiary basis for the discount rate it suggested. Because the district court's conclusion appears to place the burden of proving the correct discount rate on the defendant, we reverse and remand to the district court, on an open record, for reconsideration in light of *Watkins Co. v. Storms*, 272 P.3d 503, 511 (Idaho 2012) (holding that plaintiff has the burden to prove present value of damages, including the proper discount rate).

The case is remanded to the district court for further proceedings in accordance with this holding.

AFFIRMED in part; REVERSED and REMANDED in part. Each party to bear its own costs.

Hardenbrook v. United Parcel, 10-35967

BEA, J., concurring in part and dissenting in part.

I concur in most of the panel's determinations in the accompanying memorandum disposition. However, I do not think it was an abuse of discretion for the district court to ratify the jury's use of the plaintiff's proposed zero percent "discount rate" for future stock-based awards. Thus, I would affirm that determination rather than remand for reconsideration.

I agree with the panel and the district court that the zero percent discount rate proffered by the plaintiff's expert is puzzling because it "seems to ignore the time value of money." But when Hardenbrook's expert offered this testimony, UPS did not object nor move to strike the evidence as irrelevant because it was absurd. Instead, UPS put on the stand an opposing expert who disagreed with the zero percent rate and offered an alternative rate of 10.5%. The problem with UPS's alternative, though, was that, according to the district court, there was "no testimony or evidence as to the basis for the 'UPS discount rate' figure."

Thus the jury was offered two choices. Hardenbrook's zero percent rate seems implausible but was at least supported by *some* evidence, however unconvincing that evidence seems to all judges to have now considered the matter. By contrast, UPS's 10.5% rate was supported by "no testimony or evidence." The jury chose zero percent. Keeping in mind that "a jury's award of damages is

entitled to great deference, and should be upheld unless it is clearly not supported by the evidence or only based on speculation or guesswork," *In re First Alliance Mortgage Co.*, 471 F.3d 977, 1001 (9th Cir. 2006), I do not see grounds to disturb the jury's award.

The panel remands for reconsideration in light of the intervening Idaho case of *Watkins Co. v. Storms*, 272 P.3d 503 (Idaho 2012). That case held that a plaintiff has the burden to prove present value of damages, including the proper discount rate. I agree that the burden is on the plaintiff under Idaho law. But that is not a new principle of law such as is required on a motion for reconsideration, and in fact the plaintiff has carried that burden here.

In *Watkins*, which dealt with what damages could be recovered from a lessor's breach of a lease, the plaintiff had "presented evidence that nearly $1,750,000 would be due in rent through the end of the term of the lease." 272 P.3d at 510. The state trial court had found the lease's provisions for acceleration of rent so disproportionate to actual damages as to be unconscionable.

The Idaho Supreme Court did not grapple with whether the district court had been correct in its "unconscionability" analysis in denying plaintiff an award for future rent lost. Rather, the Idaho Supreme Court affirmed denial of damages on a totally different ground: "We find that this analysis [i.e., unconscionability *vel non*]

2

was unnecessary as [the plaintiff] failed to produce evidence of the present value of its loss in unpaid rent; without such, there could be no foundation upon which the court could base an award of damages." *Id.* The Idaho Supreme Court did not state what *kind* of evidence is necessary for a plaintiff to carry his burden to prove the future discount rate. Rather, the Idaho Supreme Court's decision to affirm the district court's denial of future damages was based on the fact that there was *"no evidence* in the record . . . regarding the present value amount of the unpaid rent." *Id.* (emphasis added).

Here, by contrast, Hardenbrook presented *some* evidence in support of his claim to a zero percent discount rate. The plaintiff's expert testified as to how UPS's stock compensation program operates and then testified to the excellent performance of UPS's stock in the year before the trial. The stock had increased 18% in one year, and the expert estimated that the stock would continue to perform well in the near and medium term. While it may seem implausible that Hardenbrook would continue to be granted stock at the rate used by the expert, and that UPS stock would deliver to Hardenbrook and other stockholders such a high rate of return for the entire period at issue—27 years—that was still *some* evidence of Hardenbrook's future damages.

The jury accepted this rate, perhaps because zero percent was the better of

3

the two imperfect alternatives proffered by the parties. Yet that is the nature of litigation in our adversary system: sometimes, a party wins because its weak evidence is stronger than the other party's even weaker evidence. Because the jury verdict shows that Hardenbrook carried his burden to prove damages, I would affirm the award of damages using his discount rate rather than remanding for reconsideration.