**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 39760**

| | | |
|---|---|---|
| JIMMY SIMS and SUSAN C. SIMS, f/k/a<br>SUSAN C. DODGE, husband and wife, | ) | |
| | ) | |
| | ) | **April 2013 Term** |
|    Plaintiffs-Respondents, | ) | |
| | ) | |
| v. | ) | **2013 Opinion No. 64** |
| | ) | |
| EUGENE THOMAS DAKER and ELDA | ) | **Filed: May 23, 2013** |
| MAE DAKER, husband and wife, | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
|    Defendants-Appellants. | ) | |
| _____ | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Clearwater County.  Hon. Michael J. Griffin, District Judge.

The judgment of the district court is <u>affirmed</u>.

Mark S. Snyder, Lewiston, for appellants.

Dale O. Cox, Orofino, for respondents.

_____

J. JONES, Justice.

This is a boundary line dispute between neighboring property owners in Clearwater County. Jimmy and Susan Sims brought suit against Eugene and Elda Daker, claiming a fence line between their properties constituted a boundary by agreement. Following a bench trial, the district court ruled in favor of the Simses. We affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

When this case arose, the Dakers and the Simses were adjoining property owners on what is known as "Greer Grade" in Clearwater County. The Dakers acquired their property, consisting of approximately 103 acres, from Craft Wall of Idaho, Inc., in 1983. The Sims property, consisting of approximately 12 acres, was acquired by Susan Sims from Elgin and Claudia Larson in 1999. The Sims property borders the east side of the Dakers' property.

1

According to the deeds by which both parties acquired their properties, the common line between the NW¼NE¼ and the NE¼NE¼ of Section 11 (the "Deeded Line") is the boundary between the two properties. The Dakers claim ownership to the Deeded Line, which is their east boundary. The Simses claim ownership of an approximately three-acre parcel located to the west of the Deeded Line (The Parcel). The Parcel is roughly triangular in shape with the Deeded Line being the east boundary, a fence line that runs from the Deeded Line to a switchback on Highway 11 forming the northwest border, and the State Highway 11 right-of-way forming the southwest border.

This dispute arose in late 2009, when Randy Hollibaugh, who was then leasing the Dakers' property, hired a surveyor to locate their east boundary. The survey revealed that the Parcel was located entirely within the legal description in the Dakers' deed. When the Simses learned of the survey, they contacted the Dakers, who lived out of state. Jimmy Sims listened in on a phone call between his wife and Elda Daker and described it at trial as follows:

> A. [Jimmy Sims] Ms. Daker told me that Randy [Hollibaugh] had a lease on her land, verbal lease, for $1,000 a year. She told me that she had no knowledge of him surveying her land, and that she did not give him permission to survey that land. And Ms. Daker on that telephone call told me at least twice or three times that she and her husband bought that property, the entire Daker place, by fence line. She said she and her husband—
> Q. [Dakers' Counsel] You said by fence line?
> A. Yes, sir. She bought it by fence line. And she said that she and her husband had walked the fence lines on that first conversation . . . .

Jimmy Sims further testified that during subsequent calls between Elda Daker and the Simses, Ms. Daker "told us a minimum of four times that the fence lines were the boundary lines."

After the survey was completed, Hollibaugh installed a fence on the Deeded Line, precipitating this action. The Simses sued in March of 2010, seeking to quiet title to the Parcel. Hollibaugh was originally a party to the action, but when he later bought the Dakers' land, excepting the Parcel, he was dismissed from the case. The parties filed cross-motions for summary judgment but both motions were denied by the district court.

After a bench trial, the district court issued its Findings of Fact and Conclusions of Law. The court found:

> No one knows when the fence was built. No one knows why the fence was built, or why it was built in the location where it was built. There is no evidence as to who owned the property on either side of the fence when it was built, or if the

2

same person owned the property on both sides of the fence at the time it was built. There is no evidence to disprove that the fence was intended to be a boundary.

Thus, the district court concluded that the "boundary between the Daker and Sims property was uncertain," and that "there was an implied agreement that the fence line . . . was built as a boundary between the two properties." Therefore, it "further conclude[d] that the [Simses] have proven by clear, satisfactory, and convincing evidence that the old fence line . . . is the boundary between their property and the property owned previously by the Dakers, and now owned by the Hollibaughs." The district court therefore entered judgment quieting title to the Parcel in favor of the Simses. The Dakers filed a timely appeal.

## II.
## ISSUES ON APPEAL

I.   Did the district court err in determining that the fence line constituted a boundary by agreement?
II.  Are the Simses entitled to attorney fees on appeal?

## III.
## DISCUSSION

### A. Standard of Review.

On appeal from a court trial, this Court limits its review "to a determination of whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law." *Watkins Co., LLC v. Storms*, 152 Idaho 531, 535, 272 P.3d 503, 507 (2012). In doing so we "liberally construe the trial court's findings of fact in favor of the judgment entered, as it is within the province of the trial court to weigh conflicting evidence and testimony and judge the credibility of witnesses." *Id.* We "will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial." *Id.* "[C]onclusions of law are freely reviewed by this Court, drawing its own conclusions from the facts presented in the record." *Id.*

### B. The district court correctly determined that the fence line constituted a boundary by agreement.

The district court concluded that the fence line was the boundary between the Simses' and Dakers' properties and consequently held that the Parcel belonged to the Simses. On appeal, the Dakers argue that the fence does not constitute a boundary by agreement because the Simses' "use of the disputed property was not of a nature to give notice of the fence." The Dakers further note that the fence line "runs at increasing obtuse angles" from the Deeded Line. Thus, they

argue, "where the fence deviates immediately and radically from the line called in the deeds and has been only a partial fence for at least the last decade, it is not reasonable to infer" that the fence constitutes a boundary by agreement. In response, the Simses contend that substantial and competent evidence supports the district court's factual findings that the fence was a boundary by agreement. As the Simses put it, "[t]here was no conflicting evidence whatsoever to the Court's findings that the fence was treated by all parties concerned as the boundary line between the [Simses'] real property and the Daker property." Thus, they argue that the fence should mark the boundary of their property and that title to the Parcel was correctly quieted in their name.

The doctrine of boundary by agreement is a well-established fixture of Idaho jurisprudence. We explained in *Morrissey v. Haley* that:

> The doctrine of boundary by agreement is well established in this state: "[w]here the location of a true boundary line on the ground is unknown to either of the parties, and is uncertain or in dispute, [the] coterminous owners [of the parcels involved] may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the parties."

124 Idaho 870, 872–73, 865 P.2d 961, 963–64 (1993) (quoting *Wells v. Williamson*, 118 Idaho 37, 41, 794 P.2d 626, 630 (1990)).

A boundary by agreement thus "has two elements: (1) there must be an uncertain or disputed boundary and (2) a subsequent agreement fixing the boundary." *Luce v. Marble*, 142 Idaho 264, 271, 127 P.3d 167, 174 (2005). "[I]f the location of the true boundary is unknown to either of the parties, and is uncertain or in dispute, such coterminous owners may agree upon a boundary line." *Id.* "[I]gnorance as to what is later deemed the true boundary" is sufficient to show uncertainty. *Morrissey*, 124 Idaho at 873, 865 P.2d at 964. Regarding the element of agreement, "[a]n agreement can be implied from the surrounding circumstances and conduct of the landowners," or inferred from "[a] long period of acquiescence." *Marble*, 142 Idaho at 271, 127 P.3d at 174. "Once a boundary line has been fixed under the doctrine of agreed boundary, that boundary is binding upon successors in interest who purchase with notice of the agreement. The general rule is that one purchasing property is put on notice as to any claim of title or right of possession which a reasonable investigation would reveal." *Id.*

4

With particular regard to fences, this Court has "repeatedly found a boundary by agreement where a fence is treated as the property line for a number of years, there is no information about why the fence was built, and no evidence to disprove that the fence was intended to be a boundary." *Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 14, 232 P.3d 330, 335 (2010). Put somewhat differently, a long-established fence leads to two presumptions:

> For nearly a century it has been the law of this state that evidence of a long established fence creates two presumptions. First, when a fence line has been erected, and then coterminous landowners have treated that fence line as fixing the boundary between their properties for such a length of time that neither ought to be allowed to deny the correctness of its location the law presumes an agreement fixing that fence line as the boundary. . . . Second, coupled with the long existence and recognition of a fence as a boundary, the want of any evidence as to the manner or circumstances of its original location, the law presumes that it was originally located as a boundary by agreement because of uncertainty or dispute as to the true line.

*Luce*, 142 Idaho at 271–72, 127 P.3d at 174–75 (citations and quotations omitted).

The district court's findings and conclusions are in accord with these holdings. Substantial and competent evidence established that the fence had been observed as the boundary line between the properties for many years. There was no evidence to the contrary.

The Simses testified that before they purchased the property from the Larsons, the Larsons took them past the western boundary into the Parcel, and walked them along a fence on its western edge, which they represented as the "boundary fence." The Simses treated the fence as their property's western boundary and the Parcel as their own—they spent time there, cleared brush up to the fence line, and pruned and fertilized the Parcel's apple trees.

Alvin Smolinski leased the Daker property from the time they acquired it until about 2004. Previous to that, he had leased the property from at least two prior owners and had performed repair work on the fence for about 51 years. Smolinski testified that he "considered the [boundary] line was the fence." He went on:

> Q. [Dakers' Counsel] Do you consider the fences in that area as being the boundary lines?
> A. [Smolinski] It has ever since I can remember.
> Q. How long is that?
> A. Well, I would say ever since I've been 15 I've fixed [the] fence off and on, then I fixed it steady since probably '67—1967.
> Q. Since you're not a lady I guess I can ask you, how old are you now?
> A. 66.

5

Q. So 51 years, then?
A. Yeah, as far as I know.

Smolinski further testified that logging occurred on the respective sides of the fence, but that the loggers would not cross it. He added that there was no gate allowing access between the properties, that the fence was in the same place "all those years," and reiterated that "as far as he knew" the fence was the boundary line between the Simses' and Dakers' properties.

Michael Kinzer, who lived next to the Simses, testified that the fence had existed since at least 1975, that the landowners on either side kept "critters" on their respective sides of the fence, and that there was logging on at least one side of the fence.

Linda Beard testified that her parents had owned the Sims property and that she had lived there with them from "sixth grade until twelfth grade." She testified that her family thought the fence line constituted "the boundary lines of [the] property." She further testified that her family kept livestock on their property, up to the fence. However, Ms. Beard never identified her parents or stated the timeframe in which she resided on the property. In its findings, the district court concluded that "Linda Beard's parents owned the Sims' property sometime prior to the Larsons." There is no evidence in the record to support this conclusion and, therefore, we disregard Ms. Beard's testimony.[1]

Even disregarding Ms. Beard's testimony, there is substantial, competent evidence that the fence on the western side of the Parcel fits within the formula set forth by the *Flying Elk* Court—it was treated as the property line for many years and there is no evidence either as to why it was built or to disprove that it was intended to be the boundary between the Simses' and Dakers' land. 149 Idaho at 14, 232 P.3d at 335. Smolinski testified that the fence has been in place for over 50 years, and that it appeared "old" when he first saw it. Neither he, nor anyone else who testified, knew who built it, or why it was built. Finally, the testimonies of Smolinski, Kinzer, and the Simses all indicated that the fence was treated as a boundary between the properties, and that the various owners of the Simses' property treated the Parcel as theirs. There was no evidence, beyond the descriptions in the deeds themselves, that disproved this.

---

[1] The Simses submitted an affidavit of Ms. Beard in support of their motion for summary judgment. In that affidavit, Ms. Beard stated that the Larsons were her parents and that they had purchased the property in late 1974 or early 1975. However, this affidavit is outside of the trial record and not part of the evidence.

The only witness who did not consider the fence to be the boundary line was Hollibaugh, who leased the Daker property after Smolinski. Hollibaugh leased the land for about three years and was in possession when he commissioned the survey. He testified:

> Q. [Dakers' counsel] It's a fence that's nowhere near the [actual] boundary line?
> A. [Hollibaugh] No. And I have always known where the corners were so I never assumed it would be the boundary.
> Q. Did you think that this fence line that's in dispute was the boundary line for the Daker's property?
> A. No. I've always known where the corners were. I just—it's so brushy in there I just didn't want to ever have to go in there and brush it out too bad.

However, Hollibaugh conceded on cross-examination that he did not know where the actual boundary line was and he did not address the issue as to whether others, particularly the present and past abutting property owners, regarded and treated the fence as the property boundary.

However, the Dakers argue that since the fence deviates so radically from the Deeded Line, the Court should hold, as it did in *Luce*, that it was unreasonable to assume a boundary by agreement. In *Luce*, the disputed parcel of land was an "irregularly shaped" 0.34-acre parcel that jutted out from the lower western edge of the plaintiff's property. 142 Idaho at 268, 127 P.3d at 172. This Court noted that, in "prior cases, we have applied the [presumption of a boundary by agreement] when it was reasonable to assume from the facts on the ground that at some prior point landowners agreed or acquiesced to a certain location as the boundary between their properties." *Id.* at 272, 127 P.3d at 175. By contrast, this Court noted, "the shape of [the 0.34-acre parcel] is so irregular and encompasses such a large portion of the Marble property that such an assumption would be unreasonable." *Id.* Without the presumption and without any evidence that the parcel "settled an actual disagreement or uncertainty," we held that Luce could not establish her rights to the parcel via a boundary by agreement. *Id.*

We decline to apply the *Luce* holding for three reasons. First and foremost, although the fence here does skew a great deal from the Deeded Line, such a deviation has not prevented this Court from finding a boundary by agreement in the past. For example, in *Flying Elk*, this Court found a boundary by agreement despite these facts:

> Although the legal description of the borders forms two straight lines, a crooked wire fence divides the parcels running roughly sixty feet south of Cornwall's true southern border, intruding into Flying Elk's property, then turning north and running haphazardly to Flying Elk's northern boundary. The fence runs nearly

three hundred feet into Flying Elk's true western edge. This leaves almost nineteen acres of Flying Elk's deeded land on Cornwall's side of the fence.

149 Idaho at 12, 232 P.3d at 333. Second, while the Dakers point out the course of the fence and how it deviates from the Deeded Line, they do not particularly present evidence as to the "shape" of the Parcel, which was the focus of the *Luce* holding. Third, and of least importance, in *Luce* we expressed concern that the disputed parcel encompassed "a large portion" of the property purchased by the defendants. *Id.* There, it did—the disputed parcel was approximately 0.34 acres, whereas the defendants owned a total of 1.34 acres. *Id.* at 268–69, 127 P.3d at 171–72. Here, the Parcel is approximately three acres of the Dakers' approximately 103 acres. The Parcel is not a large portion of the Daker parcel.

The record contains no evidence indicating that it is unreasonable to assume a boundary by agreement based on the fence line. Substantial and competent evidence supports the decision of the district court and we therefore affirm.

## C. The Simses are not entitled to attorney fees on appeal.

The Simses stated the following "Additional Issue[] Presented on Appeal" in their briefing: "Mr. and Mrs. Sims claim attorneys fees on appeal based upon Section 12-121, Idaho Code in conjunction with Rule 54(e)(1), Idaho Rules of Civil Procedure and Idaho Appellate Rule 41." However, they never developed this argument, and in fact never mentioned attorney fees again. This Court has held that, "[t]he mere citation of Idaho Code § 12-121, even by a respondent, without providing any argument, is insufficient for an award of attorney fees on appeal." *Bagley v. Thomason*, 149 Idaho 799, 805, 241 P.3d 972, 978 (2010); *see also Peterson v. Peterson*, 153 Idaho 318, 325, 281 P.3d 1096, 1103 (2012).

Here, the Simses fleetingly cited I.C. § 12-121, provided no argument to support their claim for attorney fees, and abandoned the issue, never to return to it. They are therefore not entitled to attorney fees on appeal.

## IV.
## CONCLUSION

We affirm the district court's judgment quieting title in favor of the Simses. The Simses are awarded their costs on appeal.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.